# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**DORETEO GARCIA,** :
    **Plaintiff** :
     :      **No. 1:18-cv-1966**
    **v.** :
     :      **(Judge Rambo)**
**WARDEN DAVID J.** :
**EBBERT,** *et al.*, :
    **Defendants** :

## MEMORANDUM

Before the Court is Defendants' motion to dismiss and/or motion for summary judgment. (Doc. No. 11.) For the following reasons, the Court will grant Defendants' motion.

## I. BACKGROUND

This case was initiated by the filing of a complaint pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), in Civil Action No. 18-716 by *pro se* Plaintiffs Camden Barlow, Christopher Alvarez, Justin Haynes, Darryl Taylor, Tabarus Holland, Terrell Wilson, Tony C. Knott, Agustin Argueta, Douglas Piggee, and Nathan A. Railey, all of whom were incarcerated at the United States Penitentiary in Lewisburg, Pennsylvania ("USP Lewisburg") at that time. (Doc. No. 1.) In that complaint, Plaintiffs alleged that Defendants had violated their rights under the Equal Protection Clause of the Fourteenth Amendment, their First Amendment rights to access the courts, and their

First Amendment rights regarding mail. Subsequently, Doreteo Garcia ("Garcia"), Juan Carlos Valles, and David Jackson were added as Plaintiffs. *Barlow v. Ebbert*, Civ. A. No. 17-716 (M.D. Pa.) (Doc. No. 28). On July 24, 2018, the Court dismissed Plaintiffs' Equal Protection claim and their access to the courts claim and directed service of their First Amendment enhanced mail restriction claim. *Id.* (Doc. Nos. 38, 39). On October 10, 2018, the Court granted Plaintiff Railey's motion to sever and directed that each individual Plaintiff file an amended complaint under a separate civil action number by November 9, 2018. *Id.* (Doc. Nos. 89, 90).[1]

Garcia did not file an amended complaint by November 9, 2018. Accordingly, by Order entered on December 4, 2018, the Court directed the Defendants to respond to Garcia's remaining First Amendment mail interference/enhancement claim within twenty-one (21) days. (Doc. No. 8.)[2] On February 7, 2019, Defendants Warden David J. Ebbert ("Ebbert"), Special Investigative Services ("SIS") Officer Buebendorf ("Buebendorf"), and Officer/Counselor Tharp ("Tharp") filed a motion for leave to file out of time (Doc. No. 9), a brief in support of that motion (Doc. No. 10), and a motion to dismiss and/or motion for summary judgment (Doc. No. 11).

---

[1] In addition to Garcia, Camden Barlow, Christopher Alvarez, Terrell Wilson, Nathan Railey and Juan Valles are proceeding with separate actions. Justin Hayes, Darryl Taylor, Tabarus Holland, Tony Knott, Agustin Argueta, Douglas Piggee, and David Jackson have been dismissed for failure to comply with the court's administrative order. (*See* Doc. Nos. 28, 39.)

[2] The document numbers from henceforth refer to filings in the instant case.

By Order entered that same day, Magistrate Judge Carlson granted Defendants' motion for leave to file out of time and deemed their motion to dismiss and/or motion for summary judgment timely filed. (Doc. No. 12.) Defendants filed a motion to exceed the page limitation (Doc. No. 13), brief in support of that motion (Doc. No. 14), statement of facts (Doc. No. 15), and brief in support of the motion to dismiss and/or motion for summary judgment (Doc. No. 16) on February 21, 2019. That same day, Magistrate Judge Carlson granted the motion to exceed the page limitation. (Doc. No. 17.)

Garcia did not file a brief in opposition to Defendants' motion to dismiss and/or motion for summary judgment within the twenty-one (21) day period provided for by Local Rule 7.6.[3] Subsequently, in an Order entered on April 2, 2019, the Court noted that Defendants' motion to dismiss and/or motion for summary judgment asserts, *inter alia*, that Garcia failed to properly exhaust his administrative remedies before filing this action. Pursuant to *Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018), the Court informed the parties that it would consider the exhaustion issue in the context of summary judgment, and by doing so, would consider matters

---

[3] As noted below, Garcia is now incarcerated at USP Terre Haute in Terre Haute, Indiana. He never submitted a change of address to the Court. However, the Government's certificates of service for their motion to dismiss and/or motion for summary judgment, brief in support, and statement of facts indicate that those documents were mailed to Garcia at USP Terre Haute. (ECF No. 11 at 3; ECF No. 15 at 12; ECF No. 16 at 27.) Nevertheless, Garcia still did not file a brief in opposition.

outside the pleadings in its role as factfinder. (Doc. No. 18.) Accordingly, the Court directed Defendants to, within fourteen (14) days, file an amended or supplemental brief and statement of material facts "to further address the issue of whether Plaintiff has exhausted his administrative remedies and present any additional materials pertinent to the issue to the extent they have not already done so." (*Id.* at 1.) The Court directed Garcia to file a brief in opposition within twenty-one (21) days from the date that Defendants filed their amended or supplemental materials. (*Id.* at 2.) The Court directed Garcia to "specifically address the issue of administrative exhaustion and submit materials and documents pertinent to the issue." (*Id.*) The Court also directed him to "file a statement of material facts specifically responding to the numbered paragraphs in Defendants' statements." (*Id.*)

On April 12, 2019, Defendants filed a letter regarding the Court's April 2, 2019 Order. (Doc. No. 19.) In this letter, Defendants state that they "have reviewed their brief in support of their motion to dismiss and/or motion for summary judgment and their statement of material facts previously filed." (*Id.*) They "believe they have fully stated and supported their position on the exhaustion issue in those documents." (*Id.*) Accordingly, "Defendants will not avail themselves of the opportunity to file a supplemental memorandum and statement of material facts but will instead rely on the papers previously filed." (*Id.*)

Given Defendants' letter and decision to not file supplemental materials regarding the issue of exhaustion, there will be no supplemental materials for Garcia to file a response to.[4]  Accordingly, the motion to dismiss and/or for summary judgment is ripe for resolution.

## II.  STANDARD OF REVIEW

Defendants have filed a motion to dismiss and/or motion for summary judgment, arguing that: (1) Garcia's complaint must be dismissed for lack of standing; (2) they are entitled to qualified immunity; (3) Garcia failed to exhaust his administrative remedies; and (4) sovereign immunity bars Garcia's claims against Defendants in their official capacities.

### A.  Motion to Dismiss, Federal Rule of Civil Procedure 12(b)(6)

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010).  The Court's

---

[4] As noted *supra* in footnote 2, Garcia is now incarcerated at USP Terre Haute and never submitted a change of address alerting the Clerk of Court to that fact.  His address was therefore never updated on the docket until April 12, 2019.  On that date, a copy of the Court's April 2, 2019 *Paladino* Order was resent to Garcia at his new address.  Although this Order directed Garcia to file a response to any amended and supplemental materials regarding exhaustion filed by Defendants, Defendants have indicated that they are relying on their previously filed papers.  Thus, the Court sees no need to provide Garcia no additional time to respond since there are no new materials for him to respond to.

inquiry is guided by the standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Under *Twombly* and *Iqbal*, pleading requirements have shifted to a "more heightened form of pleading." *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible. *Id.* The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. As the Supreme Court instructed in *Iqbal*, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under *Twombly* and *Iqbal*, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement

to relief." *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d Ed. 2004)).

In the context of *pro se* prisoner litigation specifically, the court must be mindful that a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond a doubt

that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

### B.     Motion for Summary Judgment

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The United States Court of Appeals for the Third Circuit has held that filing a motion to dismiss, or in the alternative, a motion for summary judgment is sufficient "to place the parties on notice that summary judgment might be entered." *Hilfirty v. Shipman*, 91 F.3d 573, 578-79 (3d Cir. 1996).

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  An issue is "genuine" if there

is sufficient evidence with which a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988) (citing *Anderson*, 477 U.S. at 248). A factual dispute is "material" if it might affect the outcome of the case. *Anderson*, 477 U.S. at 248. In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the non-moving party. *Skerski v. Time Warner Cable Co.*, 257 F.3d 273, 278 (3d Cir. 2001); *White v. Westinghouse Elec, Co.*, 862 F.2d 56, 59 (3d Cir. 1988).

A party seeking summary judgment always bears the initial burden of informing the court of the basis of its motion and identifying those portions of the record that it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The non-moving party then has the burden to "come forth with 'affirmative evidence, beyond the allegations of the pleadings,' in support of its right to relief." *U.S. Bank, Nat'l Ass'n v. Greenfield*, No. 1:12-cv-2125, 2014 WL 3908127, *2 (M.D. Pa. Aug. 11, 2014) (quoting *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004)). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," a court may grant summary judgment

or consider the fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2-3).

## III. DEFENDANTS' STATEMENT OF FACTS[5]

Garcia was housed in the Special Management Unit at USP Lewisburg from November 13, 2017 until October 15, 2018. (Doc. No. 15 ¶ 6.) He is now incarcerated at the United States Penitentiary in Terre Haute, Indiana. (*Id.* ¶ 7.)

### A. Facts Regarding Mail Monitoring at USP Lewisburg

Bureau of Prisons ("BOP") policy "requires institution staff to open and inspect all incoming general correspondence and authorized staff to read such correspondence as often as necessary to maintain security or monitor a problem particular to a specific inmate." (*Id.* ¶ 43.) General correspondence includes

---

[5] The Local Rules of Court provide that in addition to filing a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] . . . as to which it is contended that there exists a genuine issue to be tried." M.D. Pa. L.R. 56. 1. The Rule further requires the inclusion of references to the parts of the record that support the statements. *Id.* Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. *See id.* Unless otherwise noted, the factual background herein is taken from Defendants' Rule 56.1 statement of material facts. (Doc. No. 15.) Garcia has failed to file a response to Defendants' statement of facts in compliance with M.D. Pa. L.R. 56.1, and this Court is not "required to accept unsupported, self-serving testimony as evidence sufficient to create a jury question." *Hammonds v. Collins*, Civ. No. 12-236, 2016 WL 1621986, at *3 (M.D. Pa. Apr. 20, 2016) (citing *Brooks v. Am. Broad. Co.*, 999 F.2d 167, 172 (6th Cir. 1993)). The Court accordingly deems the facts set forth by Defendants to be undisputed. *See* M.D. Pa. LR 56. 1; Fed. R. Civ. P. 56(e)(2).

incoming or outgoing mail sent or received via the United States Postal Service. (*Id.* ¶ 43 n.4.) It does not include mail such as legal mail. (*Id.*)

Each federal institution is charged with establishing procedures for monitoring incoming and outgoing mail. (*Id.* ¶ 44.) Institutions have "the authority to give closer scrutiny to incoming and outgoing mail" of specific inmates, including inmates who "present management problems such as interference with or disruption of the orderly running of the institution so long as the monitoring procedures do not interfere with mail handling." (*Id.*) Established procedures are based upon "[t]he size, complexity, and security level of the institution, the degree of sophistication of the inmates confined, and other variables." (*Id.* ¶ 46.)

Over the past two (2) years, the BOP "has seen a dramatic increase in actual and attempted introductions of synthetic narcotics (i.e. suboxone, K-2 spice, synthetic marijuana) through incoming inmate correspondence." (*Id.* ¶ 47.) Narcotics are often "hidden under postage stamps, located in the seams of colored envelopes, or the entire correspondence itself is saturated in the narcotic." (*Id.* ¶ 48.) These narcotics are often sold to other inmates and are "known to cause erratic and often assaultive behavior in inmates, putting other inmates and BOP staff at grave risk." (*Id.* ¶¶ 51-52.)

Because of this threat, USP Lewisburg established enhanced mail monitoring procedures "for incoming general correspondence for inmates who have a documented history of attempting to or actually introducing narcotics while in BOP custody." (*Id.* ¶ 50.) Whether individual inmates should remain subject to these enhanced procedures is continually reviewed "to ensure the institution is utilizing the least restrictive means to address the specific safety and security concerns confronting it." (*Id.* ¶ 54.)

Under the enhanced procedures, the inmate's incoming general correspondence is processed through the mailroom and then forwarded to the assigned SIS technician. (*Id.* ¶ 55.) The mail is photocopied, and the inmate is provided the photocopy. (*Id.* ¶ 56.) Original correspondence is maintained by the technician for sixty (60) days before destruction. (*Id.* ¶ 57.) Any personal photographs contained in the correspondence are photocopied, and the photocopies are provided to the inmate. (*Id.* ¶ 58.) Original photographs are then stored in the inmate's personal property, and he can access them after leaving USP Lewisburg. (*Id.* ¶ 59.) Photocopies are generally made and provided to the inmate the same day the mail is received by the technician. (*Id.* ¶ 60.) These procedures are specific to USP Lewisburg "and do not 'follow' the inmate when he is transferred from USP Lewisburg to another federal prison." (*Id.* ¶ 62.) During the time that Garcia was

incarcerated at USP Lewisburg, he was not subject to these enhanced procedures. (*Id.* ¶ 63.)

### B.      Facts Regarding Exhaustion

The BOP "has established a multi-tier system whereby a federal prisoner may seek formal review of any aspect of his imprisonment." (*Id.* ¶ 8.)  First, an inmate must present his complaint to staff "on an Informal Resolution Attempt form commonly referred to as a BP-8." (*Id.* ¶ 9.)  If informal resolution is not successful, the inmate may then submit a Request for Administrative Remedy (BP-9) to the Warden.  (*Id.* ¶ 10.)  "The deadline for completion of the BP-8 and submission of the BP-9 is twenty days from the date of the event which is the subject of the remedy." (*Id.* ¶ 11.)  The Warden has twenty (20) days to respond to the BP-9.  (*Id.* ¶ 12.)  If an inmate is unsatisfied with the Warden's response, he may file a Regional Administrative Remedy Appeal (BP-10) with the Regional Director within twenty (20) days from the date of the Warden's response.  (*Id.* ¶ 13.)  The Regional Director has thirty (30) days to respond.  (*Id.* ¶ 14.)  Finally, an inmate may appeal the Regional Director's response by filing a Central Office Administrative Remedy Appeal (BP-11) with the Central Office within thirty (30) days of the Regional Director's response.  (*Id.* ¶ 15.)  The Central Office has forty (40) days to respond.

(*Id.* ¶ 16.)  The Central Office appeal is the final appeal, and no appeal is fully exhausted "until it is decided on its merits by the BOP's Central Office."  (*Id.* ¶¶ 17-18.)  An administrative remedy may be rejected at any level if it was not properly or timely submitted.  (*Id.* ¶ 19.)  If rejected, the remedy is "returned to the inmate and the inmate is provided with a written notice explaining the reason for rejection." (*Id.*)  A rejection of a remedy is not a decision on the merits.  (*Id.* ¶ 21.)

The BOP maintains a computerized index of all remedies and appeals filed by all inmates.  (*Id.* ¶ 28.)  An "Administrative Remedy Generalized Retrieval provide[s] details concerning each remedy filed by the inmates including the administrative remedy ID number, the date the remedy was received, an abstract (description) of the issue(s) raised, the three-letter code of the facility where the event occurred, the date the remedy was responded to, the status code, and the status reason."  (*Id.* ¶ 29.)  As of February 21, 2019, when Defendants filed their motion, Garcia had not filed any administrative remedies while in BOP custody.  (*Id.* ¶ 31.)

Administrative remedy forms "are primarily distributed by Correctional Counselors who make routine rounds several times a week."  (*Id.* ¶ 32.)  When a request for a BP-8, the informal resolution form, is received, "the counselor assigned gives the inmate the form with the date on which it was provided and the inmate's name noted on it."  (*Id.* ¶ 34.)  When an inmate returns a completed BP-8, a number

is assigned and it is "entered in a logbook with the date on which it was returned." (*Id.* ¶ 35.) The counselor then forwards the request to the proper department. (*Id.*) Once the department responds, the response "is provided to the inmate and the date is noted in the logbook." (*Id.* ¶ 36.)

Defendant Tharp's logbook for the time period during which Garcia was assigned to him indicates no record of Garcia ever returning a completed BP-8 form. (*Id.* ¶ 37.) Counselors also "provide formal administrative remedy forms (BP-9s, 10s, and 11s) to inmates who request them." (*Id.* ¶ 39.) The inmate is responsible for sending those forms directly to the appropriate level. (*Id.* ¶ 40.) Defendant Tharp never refused to provide Garcia with administrative remedy forms, and never attempted to interfere in any way with Garcia's use of the administrative remedy process. (*Id.* ¶¶ 41-42.)

## IV.   DISCUSSION

### A.   Lack of Standing

Defendants first argue that Garcia's complaint is subject to dismissal because he lacks standing to raise the First Amendment claim regarding the enhanced mail monitoring procedures. (Doc. No. 16 at 13-14.)

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to

actual cases or controversies." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 37 (1976). Standing provides "justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Three elements comprise the "irreducible constitutional minimum of standing": (1) an "injury in fact"; (2) an injury that is causally connected to the conduct of which the plaintiff complains; and (3) the likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Griffin v. Holt*, No. 3:08-CV-1028, 2008 WL 5348138, at *2 (M.D. Pa. Dec. 17, 2008). An "injury in fact" refers to the "invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560-61.

Here, the undisputed record establishes that Garcia was never subject to the enhanced mail monitoring procedures while he was incarcerated at USP Lewisburg. (Doc. No. 15 ¶ 63.) Thus, he has not suffered an "injury in fact" sufficient to give him standing to raise a First Amendment challenge to these procedures. For that reason alone, Garcia's complaint is subject to dismissal. Defendants also argue that they are entitled to summary judgment because, *inter alia*, Garcia failed to exhaust his administrative remedies for this claim. The Court addresses this argument below.

### B. Failure to Exhaust Administrative Remedies

Under the Prison Litigation Reform Act of 1996 ("PLRA"), a prisoner must pursue all available avenues for relief through the prison's grievance system before bringing a federal civil rights action. *See* 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). Section 1997(e) provides, in relevant part "[n]o action shall be brought with respect to prison conditions under section 1983 of the Revised Statutes of the United States, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e). The exhaustion requirement is mandatory. *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007); *Booth*, 532 U.S. at 742 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures").

The Third Circuit has further provided that there is no futility exception to § 1997e's exhaustion requirement. *Nyhuis v. Reno*, 204 F.3d 65, 75-76 (3d Cir. 2000). Courts have typically required across-the-board administrative exhaustion by inmates who seek to pursue claims in federal court. *Id.* Additionally, courts have imposed a procedural default component on this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate

grievance process before proceeding into federal court. *Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004). Courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal court. *See e.g., Booth v. Churner*, 206 F.3d 289 (3d Cir. 2000); *Bolla v. Strickland*, 304 F. App'x 22 (3d Cir. 2008).

This broad rule favoring full exhaustion allows for a narrowly defined exception. If the actions of prison officials directly caused the inmate's procedural default on a grievance, the inmate will not be held to strict compliance with this exhaustion requirement. *See Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000). However, case law recognizes a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." *Davis v. Warman*, 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will only be excused "under certain limited circumstances," *Harris v. Armstrong*, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." *Warman*, 49 F. App'x at 368.

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances, inmate requests to excuse a

failure to exhaust are frequently rebuffed by the courts. Thus, an inmate cannot excuse a failure to timely comply with these grievance procedures by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. *Harris v. Armstrong*, 149 F. App'x 58, 59 (3d Cir. 2005). Nor can an inmate avoid this exhaustion requirement by merely alleging that the administrative policies were not clearly explained to him. *Warman*, 49 F. App'x at 368. Thus, an inmate's confusion regarding these grievances procedures does not, standing alone, excuse a failure to exhaust. *Casey v. Smith*, 71 F. App'x 916 (3d Cir. 2003); *see also Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) ("[I]t is well established that 'ignorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing.'") (citations omitted).

Recently, the Supreme Court considered what renders administrative remedies unavailable to an inmate such that a failure to exhaust can be excused. *See Ross v. Blake*, 136 S. Ct. 1850 (2016). The Court noted "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 1859. First, an administrative procedure is not available "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, a procedure is not available

when it is "so opaque that it becomes, practically speaking, incapable of use." *Id.*

Finally, a procedure is unavailable when "prison administrators thwart inmates from

taking advantage of a grievance process through machination, misinterpretation, or

intimidation. *Id.* at 1860.

The Third Circuit recently joined other circuits to hold "that administrative

remedies are not 'available' under the PLRA where a prison official inhibits an

inmate from resorting to them through serious threats of retaliation and bodily

harm." *Rinaldi v. United States*, 904 F.3d 257, 267 (3d Cir. 2018). To defeat a

failure-to-exhaust defense based on such threats, "an inmate must show (1) that the

threat was sufficiently serious that it would deter a reasonable inmate of ordinary

firmness and fortitude from lodging a grievance and (2) that the threat actually did

deter this particular inmate." *Id.* at 269.

Failure to exhaust is an affirmative defense that must be pled by the defendant.

*Jones v. Bock*, 549 U.S. 199, 216 (2007). "In a motion for summary judgment, where

the movants have the burden of proof at trial, 'they [have] the burden of supporting

their motion for summary judgment with credible evidence . . . that would entitle

[them] to a directed verdict if not controverted at trial.'" *Foster v. Morris*, 208 F.

App'x 174, 179 (3d Cir. 2006) (quoting *In re Bressman*, 327 F.3d 229, 237 (3d Cir.

2003) (internal quotations omitted)). If "the motion does not establish the absence

of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented." *Id.* (quoting *Nat'l State Bank v. Fed. Reserve Bank of N.Y.*, 979 F.2d 1579, 1582 (3d Cir. 1992) (internal quotations omitted)).

Defendants contend that Garcia failed to properly exhaust his administrative remedies with respect to his First Amendment claim. In support, Defendants have submitted an affidavit from E. Frymoyer, an Attorney Advisor at USP Lewisburg (Doc. No. 15-1, Ex. 1), and a BOP Administrative Remedy Generalized Retrieval indicating that Garcia has not filed any administrative remedies while in BOP custody (*id.* Ex. 1-A). Defendants have also submitted an affidavit from Defendant Tharp establishing that Garcia never returned a completed BP-8 form to him during the time he was assigned to Defendant Tharp's caseload. (*Id.* Ex. 3.) Moreover, Defendant Tharp never refused to provide Garcia with administrative remedy forms and never attempted to interfere with his ability to utilize the administrative remedy procedure. (*Id.* ¶ 7.)

Consequently, because the undisputed record reflects that Garcia failed to exhaust his administrative remedies regarding his First Amendment claim, and because Garcia has not "come forth with 'affirmative evidence, beyond the allegations of the pleadings,' " that refutes the defense that he has failed to properly

exhaust this claim, *see U.S. Bank, Nat. Ass'n v. Greenfield*, Civ. No. 12-2125, 2014 WL 3908127, at *2 (M.D. Pa. Aug. 11, 2014) (quoting *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004)), summary judgment will be entered in favor of Defendants.[6]

## V.     CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion to dismiss and/or motion for summary judgment.  (Doc. No. 11).  An appropriate Order follows.


_____
SYLVIA H. RAMBO
United States District Judge

Dated: April        , 2019

---

[6] Given the Court's conclusion that Garcia lacks standing and did not exhaust his administrative remedies, the Court declines to address Defendants' alternate arguments that they are entitled to qualified immunity and that sovereign immunity bars any claims brought against them in their official capacities.